In the Matter of the Application of ROSEMARY SHERIDAN, Petitioner, Respondent, for Herself and All Other Candidates to the Position of Social Investigator, etc., for an Order against PAUL J. KERN and Others, as the Municipal Civil Service Commission of New York City, Appellants.*

First Department, June 24, 1938.

* Affg. 166 Misc. 920,

*William S. Gaud, Jr.*, of counsel [*Charles F. Murphy* with him on the brief; *William C. Chanler, Corporation Counsel*, attorney], for the appellants.

*W. Lawrence Darrow* of counsel [*William H. Darrow* with him on the brief], for the respondent.

COHN, J. The petitioner, who possessed the requisite qualifications, took the open competitive examination for the position of social investigator conducted by defendants and secured a place on the eligible list. She is a college graduate and had formerly been employed as a social investigator by the bureau of Catholic charities. She instituted this proceeding to have the court direct the regrading of her experience paper and that of all applicants who successfully passed the written test, upon the claim that, in rating the experience of candidates, defendants unreasonably and unfairly discriminated against applicants who possessed experience in outside agencies engaged in relief work in favor of those employed by the emergency relief bureau of New York city.

The examination was held on December 30, 1936, and of the 10,608 applicants, 4,396 were successful. All persons employed in the emergency relief bureau of New York city as social investigators or doing work of a similar character were admitted to the examination without regard to preliminary requirements of age, educational training and experience in social service work exacted of other applicants. The propriety of thus favoring employees in the emergency relief bureau appears to have been sustained in *Matter of O'Callaghan* v. *Finegan* (166 Misc. 556; affd., 276 N. Y. 587). (Cf., also, *Matter of Grout* v. *Finegan*, 275 N. Y. 252.)

The printed notice of examination issued by defendants in setting forth the requirements and conditions of the test stated:

" Subjects and Weights: A final average of 75 per cent. will be required on the entire examination. Written test, weight 5, 70 per cent. required on each part. Experience, weight 5, 70 per cent. required.

" In rating experience, due credit, in accordance with the provisions of the Hendel Act, █ will be given for experience in the Emergency Relief Bureau of New York City. Due credit will also be given for experience in other local relief authorities."

The record discloses that in rating experience the municipal civil service commission gave those applicants who were employed by the emergency relief bureau as social investigators, or in some similar capacity, a basic rating of eighty per cent, while others received a basic rating of seventy per cent; second, it gave emergency relief bureau social investigators a credit of four per cent for their first year's experience with that bureau, while others were given a credit of one per cent for their first year's experience with other agencies; and, finally, emergency relief bureau employees with a college degree were given an additional credit of three points, while others received no credit for such a degree.

The Special Term directed the commission to rerate the experience paper by giving all candidates (1) an equal basic experience grade, (2) equal credit for a college degree, and (3) the same credit value for experience with private agencies as that credited to experience with the emergency relief bureau.

Ordinarily, the courts will not interfere with the determination of administrative bodies in the proper exercise of their discretion; nor will they undertake to substitute their judgment for that of civil service commissions in preparing examinations and in rating applicants who have participated in them. (*People ex rel. Caridi* v. *Creelman,* 150 App. Div. 746, 749; *People ex rel. Braisted* v. *McCooey,* 100 id. 240; *Matter of Allaire* v. *Knox,* 62 id. 29, 32; affd., 168 N. Y. 642.) However, there is a limit to the exercise of discretion by an administrative body or officer which may be judicially controlled. If the discretion is illegally, unfairly and unreasonably exercised, a person aggrieved may appeal for redress to the courts. (*Matter of Sloat* v. *Board of Examiners,* 274 N. Y. 367, 370; *Matter of Fink* v. *Finegan,* 270 id. 356, 363; *Matter of Barthelmess* v. *Cukor,* 231 id. 435; *People ex rel. Schau* v. *McWilliams,* 185 id. 92, 100.)

We can find no rational basis for the method of rating the experience of the candidates concededly adopted here by defendants. It is possible that experience as an investigator for a social agency, Federal, State or municipal, may be broader and of greater practical value than that gained in a private social agency and might justify a difference in the basic rating. That, however, is not the formula that has been adopted. Nor is experience in a particular agency, the emergency relief bureau, solely considered. It is the then employment with the emergency relief bureau which merited the higher rating, a bureau novice being preferred over a worker with years of experience in a private agency.

The Court of Appeals has announced and reiterated the principle that in competitive tests or examinations objective standards or measures must be employed. (*Matter of Sloat* v. *Board of Examiners, supra; Matter of Fink* v. *Finegan, supra; Barlow* v. *Berry,* 245 N. Y. 500.) In rating experience, the formula must be objective. That quality is lacking in the differentiation in allotting a basic rating of eighty per cent to emergency relief bureau applicants and seventy per cent to all others and in the credit of four per cent given for the first year's experience with the emergency relief bureau and of one per cent for such experience with other agencies; its absence is conspicuous in the differentiation between a credit of three points given to emergency relief bureau employees with a college degree and no credit given for a like degree possessed by others.

The result of the method of rating adopted has been to place the bulk of non-emergency relief bureau employees on the list below No. 2,700, whereas the temporary employees of the bureau, in the main, have been put at the head. This is a " freezing " into permanent position of those who obtain temporary employment and does violence to the merit principle.

The social investigators for whose benefit preferential standing upon the eligible list is sanctioned by the discriminatory ratings complained of, were originally employed by the emergency relief bureau as " emergency or provisional appointees." (Laws of 1931, chap. 798, as amd. by Laws of 1932, chap. 567.) Such appointments were made by department heads without any open competitive examination and selections were made wholly in their discretion. Appointments of this character are usually permissible in cases of emergency when there is no appropriate eligible list available for the position, and are limited to a period of four months. (Civil Service Law, § 15.) It has long been the law in this State that a temporary or provisional appointment to a competitive position cannot ripen into a permanent appointment. (*Koso* v. *Greene,* 260 N. Y. 491, 495; *Matter of Goss* v. *Rice,* 160 Misc. 698,

705; affd., 249 App. Div. 895.) " If such a thing could be done, it would defeat the entire scheme of civil service and nullify the constitutional provisions in regard thereto." (*People ex rel. Orr* v. *Scannell*, 66 N. Y. Supp. 182, 184, [not officially reported].) Provisional employees are entitled to no preference over other classes to positions in the competitive civil service. In *Koso* v. *Greene* (*supra*, at p. 495) the Court of Appeals said: " Permanent appointments are made without reference to whether the appointee is holding a temporary or provisional appointment to the same position, or how long such appointment has lasted. These appointments are mere stop-gaps, exceptions of necessity to the general rules with respect to the filling of such positions, and are in no sense probationary. While such appointments may on occasion be succeeded by a permanent appointment, this may only be by virtue of examination and eligibility under the civil service laws, and not by reason of any ripening of the temporary or provisional appointment into a permanent appointment."

In *Matter of Fink* v. *Finegan* (*supra*, at p. 363, opinion by FINCH, J.), what the court stated in discussing non-competitive examinations is particularly pertinent to the attempt made here to favor provisional or temporary appointees: " Non-competitive examinations may readily be manipulated by the unscrupulous with little likelihood of detection. Politics, passion and friendship may play their part. Even the most scrupulous examiner may be influenced in his determination by unconscious prejudice and bias. For these reasons, the non-competitive test should not be employed unless the need is imperative."

In defense of the preference granted to the temporary employees of the emergency relief bureau, defendants rely (1) upon the Hendel Act, and (2) upon the fact that experience in the " actual job " is the best test of fitness.

The so-called Hendel Act (Laws of 1931, chap. 798, § 19, as amd. by Laws of 1936, chap. 822) provides in part that in the grading of eligible lists established as a result of civil service examinations for positions in the local emergency relief bureau " due credit shall be given for experience with the local emergency relief bureaus or other local relief authorities." We do not construe this language to mean that temporary employees of the emergency relief bureau are to receive in the open competitive examination any higher rating for experience than that accorded to those with experience gained in agencies outside the department. The contrary interpretation sought to be placed upon the act by defendants would make the statute unconstitutional. It was so decided by the Court of Appeals in *Matter of O'Callaghan* v. *Finegan*

*(supra)*. In that case there was under review the enactment of the Legislature (Laws of 1937, chap. 358) directing the placing of relief bureau positions in the civil service. It provided that " in the grading of  *  *  .*  examinations a *higher* rating shall be given for experience in administration of home relief gained as an employee in an equivalent position in a public welfare department or emergency relief bureau than for experience gained in any other department or agency, public or private." ▌ The court ruled that this was overriding the Constitution and that such provision in the law was of no effect. The civil service commission was accordingly directed to refrain from giving a higher rating for experience obtained in the emergency relief bureau of the department of public welfare. In view of this holding, we do not think that the civil service commission should persist in its efforts to justify the attempt to accomplish indirectly a result which has been prohibited by our highest court.

As to the claim that experience in the actual position is the best test of fitness, the provisions of the Civil Service Law were undoubtedly formulated with this principle as a guide. That statute provides that fitness in the " actual job," to use the language of defendants, be determined *after, and not before,* the appointee has passed an open competitive examination. The law commands that every original appointment to, or employment in, any position in the competitive class shall be for a probationary period of three months (Civil Service Law, § 9, as amd. by Laws of 1927, chap. 440, § 2; rule XII, Rules for Classified Civil Service), and if the conduct, capacity or fitness of the appointee be not satisfactory, he may be discharged at the end of such term. The test of fitness in the " actual job " under the law comes after, and not before, all applicants have had a fair opportunity to compete in an open competitive examination held pursuant to the rules of civil service. That was the holding of the Court of Appeals in *People ex rel. Sweet* v. *Lyman* (157 N. Y. 368, at p. 380). The employment of this method may not be justified in the case at bar because the temporary investigators of the emergency relief bureau are already familiar with the individual cases assigned to them for investigation and because perhaps the specific cases then being handled, may be more expeditiously conducted than by others appointed as a result of the examination; nor may it be justified upon the ground that efficiency demands that there should be as short a lag as possible between the transfer of cases to the appropriate city department and their handling by investigators conversant with them. In *Matter of Sloat* v. *Board of Examiners*

(*supra*) the court, in an opinion by LEHMAN, J., said (at p. 370): " Disobedience or evasion of a constitutional mandate may not be tolerated even though such disobedience might, perhaps, at least temporarily, promote in some respects the best interests of the public."

We think that the Special Term was right in holding that the method of evaluation of experience of applicants employed by defendants might ultimately result in completely abrogating the principle of determining fitness of appointees by competitive examinations. It does not require a great stretch of the imagination to visualize a situation where a department head desirous of favoring his own appointees might completely nullify the purpose and intent of the civil service laws by making temporary or provisional appointments of favored ones and by thereafter having the civil service commission grant preferred credits for that experience to such appointees to the extent that it would be impossible for an outsider to successfully compete with such preferred appointees at an open competitive examination. While we realize that the determination of the fitness and qualification of candidates is committed by law to the municipal civil service commission, palpably unjust and discriminatory standards of determining the fitness of candidates may not be tolerated.

Any method which results in improperly placing in permanent positions those who obtain temporary employment is a reversion to the rightly condemned spoils system and is destructive of much that has been accomplished in the way of civil service reform. Where such procedure is sanctioned by an administrative body, it presents a clear case of abuse of discretion which the courts are in duty bound to correct.

For the foregoing reasons, the order, entered on or about February 15, 1938, so far as appealed from should be affirmed, with twenty dollars costs and disbursements.

The appeal from the order denying motion for reargument should be dismissed.

MARTIN, P. J., O'MALLEY, TOWNLEY and CALLAHAN, JJ., concur.

Order, so far as appealed from, unanimously affirmed, with twenty dollars costs and disbursements. Appeal from order denying motion for reargument dismissed.