RAMÓN SÁRRAGA, Petitioner and Appellee, *v.* R. SANCHO BONET, TREAS., ET AL., Respondents and Appellants.

No. 8132. Argued May 20, 1940.—Decided May 28, 1940.

856

*George A. Malcolm, Attorney General,* and *R. García Cintrón, Assistant Attorney General,* for appellants. *Wilson P. Colberg* and *José López Baralt* for appellee.

MR. JUSTICE DE JESÚS delivered the opinion of the court.

Petitioner was appointed on February 4, 1937, temporary Paymaster and Chief of Bureau of Accounts in the Treasury Department with a salary of $3,300 per annum.

Having decided to appoint him permanently to a position comprised within the Classified Civil Service, the Treasurer asked the Governor to exercise the power conferred on him by subdivision (*k*) of section 4 of the Civil Service Act, approved in 1931, and to exempt said employee from the

competitive examination in the interest of administrative economy and of the efficiency of the service. The Treasurer's request was granted by the Governor in a communication dated November 24, 1937, which literally reads as follows:

"La Fortaleza—Puerto Rico—San Juan, November 24, 1937. The Honorable, The Treasurer of Puerto Rico, San Juan, P. R.— Sir:—With reference to your request of the 26th ultimo for the exemption of Mr. Ramón Sárraga from free competitive examination for his appointment as Paymaster of Puerto Rico and Chief, Bureau of Accounts, Department of Finance, which position he has been holding temporarily since February 6, 1937, you are informed that upon its favorable recommendation by the Civil Service Commission in view of the highly qualifying training and business experience Mr. Sárraga has had, which fits him considerably more than it could reasonably be expected from anyone else meeting the requirement of examination, and considering furthermore your opinion that his appointment would result in the interest of administrative economy and the efficiency of the service, Mr. Ramón Sárraga is hereby exempted from such examination for the aforesaid position in your department, under paragraph (k), section 4 of the Civil Service Act, approved May 11, 1931. Respectfully, (signed:) Blanton Winship, Governor."

Having secured the consent of the Governor after consulting with the Civil Service Commission, the Treasurer on the same day, February 24, 1937, appointed him permanently as from that date with a salary of $3,300 per annum.

Petitioner held said position until August 31, 1938, when the Treasurer, without advancing any reasons, transferred him to the position of Chief of Bureau of Internal Revenue as from September 1, 1938. No authorization from the Civil Service Commission for such transfer was sought by the Treasurer, but upon petitioner asking the Commission not to approve the transfer in question the Commission answered on September 26, 1938, to the effect that petitioner had been appointed to the position of Paymaster and Chief of the Bureau of Accounts, being exempted from free competitive examination, and that as the position to which the Treasurer

intended to transfer him was also comprised within the "Classified Civil Service," such transfer could only be effected with the express consent of the Governor, in accordance with subdivision (*k*) of section 4, *supra*. Notwithstanding the objection of the Civil Service Commission, the Treasurer insisted on transferring him and appointed someone else temporarily to the position of Paymaster and Chief of Bureau of Accounts.

In spite of the action taken by the Treasurer, petitioner went on going to the office as usual, but noticing that his services were not required and upon the refusal of the Treasurer to send his name in the voucher of the Department as Paymaster and Chief of Bureau of Accounts, petitioner decided to absent himself from the office. He then instituted this mandamus proceeding in which he seeks his reinstatement and the payment of his salary for the time he had been removed from office.

One of the judges of the District Court of San Juan who heard the case dismissed the petition, but while the appeal was being perfected the stenographer who had taken down the proceedings died and on that account a new trial was granted to be had before another of the judges who rendered judgment in favor of petitioner.

In the Civil Service Act all the positions and offices of the Insular Government have been divided into two great branches respectively called "Unclassified Service" and "Classified Service." In this respect, section 4 thereof provides as follows:

"Section 4.—*The Unclassified Service.*—The Unclassified Service shall comprise:

"(*a*) All officers appointed by the President of the United States;

"(*b*) All officers appointed by the Governor by and with the advice and consent of the Senate;

"(*c*) All officers elected by the people and those whose appointments are confirmed by the legislative body;

"(*d*) All officers and employees of the Insular Legislature;

"(e) The Secretary and the confidential stenographer of the Governor, and a private secretary to the head of each executive department;

"(f) Not more than two assistant heads of each executive department;

"(g) The household employees of the Executive Mansion;

"(h) All officers and employees whose annual compensation shall not exceed three hundred dollars;·

"(i) All officers of the judicial service not otherwise included in the Unclassified Service;

"(j) Not exceeding one stenographer or confidential clerk to each judge of a court of record and one to each district attorney;

"(k) In the interest of administrative economy or of the efficiency of the service, The Governor of Porto Rico may exempt from competitive examination any officer or employee, after consultation with the Civil Service Commission, but subject to disapproval by the Legislature.

Section 5 of the Act, which describes the Classified Service, provides:

"Section 5.—*The Classified Service.*—The Classified Service shall comprise all officers and employees of the Insular Government of Porto Rico, not specifically included in section 4 hereof, ... "

Section 22, which establishes the procedure to be followed in filling positions which become vacant and comprised in the Classified Civil Service, provides that:

"Section 22.—*Certification from Lists.*—Whenever a position in the classified service becomes vacant the appointing authority, if he desires to fill the vacancy, shall make requisition for eligibles from the Civil Service Commission. The Commission shall certify not more than the highest three names on the appropriate re-employment list for the class to·which the vacant position has been allocated and who are willing to accept employment.

"Whenever a requisition is so made, or whenever a position is held by a provisional or temporary appointee and a re-employment list or employment list for the class of such position exists, the Commission shall forthwith certify eligibles as provided above and the said appointing authority shall forthwith make selection for appoint-

ment with sole reference to merit and fitness and without regard to other considerations. No person so certified and appointed shall be discontinued, suspended, given leave of absence from duty, transferred or reduced in pay or grade, except for such reasons as will promote the good of the service, specified in writing and after an opportunity to be heard by the Commission, and then only with its consent and approval....."

Further on, in reference to removals, section 28 provides as follows:

"Section 28.—*Removals.*—No person holding an office or place in the classified service, shall be removed or discharged except for just cause, upon written charges, and after an opportunity to be heard in his own defense."

If, as claimed by petitioner, he could be considered as an employee comprised within the Classified Civil Service, he would be protected by the provisions of sections 22 and 28 of the Act, and in such case, as no compliance was had with the procedure prescribed by law for his transfer or removal, he would be entitled to the peremptory writ of mandamus sought by him. If, on the other hand, he is included within the Unclassified Civil Service, he is not then protected by the above sections and his office is at the disposal of the appointing authority, unless it is otherwise expressly provided by law. Therefore, the primary question to be settled is whether or not petitioner is comprised within the Classified Civil Service.

We will observe, as was very properly done by Judge Romany in his grounds for the first judgment of dismissal of the petition, that subdivision (*k*) already referred to appears at the bottom of section 4 where all the officers comprised in the Unclassified Civil Service are enumerated. It can not be argued that this subdivision was haphazardly placed at the bottom and that it has no relation to the provisions of section 4, for it will be observed that in said section each class of officers comprised within the Unclassified Civil Service is marked by correlative letters and that the last subdivision is marked with the letter *k*, which correla-

tively corresponds to such employees as are exempted from free competitive examination by authority of the Governor. This shows the legislative intent not to comprise such employees within the classified Civil Service as are required to pass an examination under section 19 of the Act.

It is true that the position to which petitioner was appointed is comprised within the Classified Civil Service, but this does not mean that his appointment thereto carries with it his inclusion in the Classified Civil Service for which a free competitive examination is required.

Notwithstanding his appointment, petitioner continued to be an employee within the Unclassified Civil Service, and this is the reason why the Commission refused to approve his transfer to the position of Chief of Bureau of Excise Taxes on the ground that the Commission's consent required the authorization of the Governor, as was done when the Treasurer decided to appoint him permanently at the time he was filling the former position temporarily.

It is urged by petitioner that he was never removed from the position of Paymaster and Chief of the Bureau of Accounts, partly on the ground that his transfer to the position of Chief of the Bureau of Excise Taxes was not valid inasmuch as no consent thereto had been given by the Civil Service Commission which, on the contrary, opposed it on the ground that the Governor's authorization had not been previously obtained.

Taking into consideration all the attendant circumstances, beginning with the letter from the Treasurer to the appellee on August 31, 1938, whereby the latter was advised that he had been assigned from his position as Paymaster and Chief of the Bureau of Accounts of the Department to the position of Chief of the Bureau of Excise Taxes, effective as from September 1, 1938, and was directed to deliver all documents, files, papers, furniture, stationery and all pending matters in said Bureau to Mr. M. Martínez Casanova, General Tax Inspector, upon receipt of that communication, and if it is

further borne in mind that Mr. M. Martínez Casanova was appointed, although temporarily, to the position which he had filled, and that although appellant continued regularly to report for duty no work was assigned to him nor was his name included in the monthly payroll, and if it is further considered that upon the issuance by the district court of the alternative writ of mandamus the Treasurer opposed the issuance of the peremptory writ, it will be easily concluded that it was the intention of the Treasurer, of which appellee was impliedly told, to remove him from his position as Paymaster and Chief of the Bureau of Accounts.

In *People* v. *Travis* (1915) 154 N.Y. Supp. 403, the relator was appointed to a position comprised within the Classified Service. Some time afterwards respondent removed him from office without a hearing. The relator contended that the position from which he had been removed was comprised within the Classified Service and, therefore, that he could not be summarily removed, without a previous hearing, and that as a matter of fact his removal was effected in bad faith and for political considerations. Respondent answered that the removal was effected for reasons of retrenchment, that the position was a sinecure, that there was scarcely any work to do and that when preparing the budget for his office respondent had failed to appropriate funds for relator's office. It did not appear from the record that the position in question had been filled by somebody else. Relator's appointment was made under subdivision 2 of section 15 of the Civil Service Law of New York, which reads as follows:

"In case of a vacancy in a position in the competitive class where peculiar and exceptional qualifications of a scientific, professional or educational character are required, .... the state or municipal commission may suspend the provisions of the rule requiring competition in such cases...."

In dismissing the mandamus petition filed by relator, the Supreme Court, Appellate Division, expressed itself as follows:

"I think it is manifest that any appointment made under the foregoing provisions is exceptional and that the appointee is thereby taken out of the competitive class, where those holding a similar position ordinarily belong, and that he is *pro hac vice* placed in a noncompetitive class, and thus becomes subject to removal under circumstances applicable to persons in such class. Such a construction co-ordinates the manner of removal with the manner of appointment in the particular instance and offends neither the spirit nor the letter of the Civil Service Law. A similar principle was applied in the construction of the Municipal Civil Service Law in *People ex rel. Corkill* v. *McAdoo,* 113 App. Div. 770, 99 M. Y. Supp. 324."

See also *Welling* v. *Fullen,* 299 N.Y. Supp. 86, where the case of *People* v. *Travis, supra,* is cited with approval. In *Shinn* v. *People,* 59 Colo. 509, 149 P. 623, a similar question to that of the instant case was raised. Shinn contended that he had been discharged without cause and without a hearing. It was held therein that the law is only applicable to such employees as had passed an examination and thus qualified, and that Shinn was not included in the Classified Service and was not entitled, therefore, to the protection of the law because he had failed to take an examination.

From the foregoing, we reach the conclusion that petitioner is not included in the Classified Civil Service and is not, therefore, entitled to the protection accorded by the Civil Service Act to employees included in said classification.

In our judgment the appeal must be sustained, the judgment appealed from reversed and the mandamus petition dismissed, with costs on the plaintiff.

ON MOTION FOR REHEARING

June 17, 1940

█ Appellee moves for reconsideration of our judgment of the 28th of last month reversing that for plaintiff rendered by the district court. He insists that, assuming that he is not included in the Classified Civil Service, yet, as the office of General Paymaster which he was filling is comprised within such classification, he could not validly be removed

from such office without charges being brought against him and an opportunity given him to defend, as provided in section 28 of the Civil Service Act, which reads as follows:

"Section 28.—*Removals*.—No person holding an office or place in the classified service, shall be removed or discharged except for just cause, upon written charges, and after an opportunity to be heard in his own defense."

The clear letter of the law undoubtely shows that only persons filling offices or places comprised within the Classified Civil Service may come under the protection of section 28, *supra*. This section, however, must of course be construed in harmony with section 22 which provides that offices or places comprised within the Classified Civil Services must be filled by persons included in said classification, and in harmony also with section 5 which specifies who are the officers or employees included in the Classified Service.

It is true that appellee was filling an office comprised with the Classified Civil Service, but his appointment was not made pursuant to the general rule established by section 22 of the law, but by virtue of the exception contained in subdivision (*k*) of section 4, which authorizes the Governor, with the consent of the Civil Service Commission, to exempt employees from free competitive examination, on the ground of economy or in the interest of the service, such employees, however, being considered as comprised within the Unclassified Civil Service in accordance with subdivision (*k*) of section 4, *supra*, and with the precedents cited in the main opinion. Therefore, such officers as have qualified by passing the examination required by law are the only ones entitled to the permanency guaranteed by section 28 invoked by appellee.

If the above section just quoted had been worded so as to read, "no person comprised within the Classified Civil Service shall be removed from office," etc., the application of the legal provision so worded would frequently produce effects contrary to the clear purpose of the legislator, for on

being appointed to a position in the Unclassified Sivil Service a person comprised in the Classified Service could not be removed from such position unless charges were preferred and an opportunity given to defend, which guarantees, as we have seen, are exclusively reserved to those who fill permanently and not as a privilege or special concession positions comprised within the Classified Civil Service.

The other questions raised in the motion for reconsideration have sufficiently been discussed in the main opinion.

The motion for reconsideration must be denied.